

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 29, 2022

**BY CM/ECF**
The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States* v. *Christian Pabon*, a/k/a "Banga," S1 18 Cr. 319 (SHS)

Dear Judge Stein:

      The defendant in the above-captioned case is scheduled to be sentenced on October 13, 2022 at 12:00 p.m. At trial, a jury convicted the defendant of conspiracy to commit racketeering and murder in aid of racketeering. The latter count carries a mandatory minimum sentence of life imprisonment. For the reasons set forth below, the Government believes that the mandatory sentence of life imprisonment is sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

    **I.**        **Offense Conduct**

        **A.**   **The 200**

      Between in or around 2014 and in or around September 2018, the defendant was a member of a violent gang based near Dyckman Street in northern Manhattan. The gang referred to themselves as "the 200", as Dyckman Street was historically known as 200th Street. The 200 made money by robbing drug dealers, burglarizing commercial establishments, and narcotics sales. Members and associates of the 200 also frequently engaged in a practice they referred to as "breaking" wholesale drug traffickers. The defendants in this case would "break" these victims by passing off either fake money to purchase real drugs, or fake drugs in exchange for real money.

      In order to protect their territory, members of the 200, including the defendant, carried out acts of violence against members of rival street crews, including shootings, robberies, and as discussed in more detail below, on October 2, 2014, the murder of Orlando Rivera, an innocent bystander who happened to be present when Pabon and another member of the 200 opened fire at rival gang members.

        **B.**   **Pabon's Role in the 200**

      The defendant was a shooter for the 200. As a shooter, the defendant carried out acts of violence to protect the 200's territory and responded to perceived provocations and disrespect from

rival gang members. Other members of the 200 knew to contact the defendant if they needed a gun to carry out violence. As a shooter, the defendant was responsible for stashing some of the 200's guns, including in his apartment or in rental cars in their territory and he was known to always carry a gun himself. His gang alias, "Banga," was a reference to his willingness to shoot guns on behalf of the 200. As demonstrated at trial through witness testimony and evidence from the defendant's own social media account, the defendant engaged in these acts of violence and shootings, including the Rivera murder, in order to further the 200 Enterprise, to protect the 200's territory against rival gangs, and to solidify and advance his own status in the 200. In addition to the murder of Orlando Rivera, the defendant was involved in multiple acts of gun violence on behalf of the 200.

### C. The Murder of Orlando Rivera

Between at least 2014 through approximately 2016, the 200 was feuding with a nearby street gang whose territory focused on the area around 193rd Street in Manhattan. That rival gang referred to itself as "193," and controlled drug sales, including sales of heroin, crack, marijuana, and pills, in its territory. The rivalry between the 200 and 193 resulted in a series of retaliatory shootings, including the October 2, 2014 murder of Orlando Rivera, an innocent bystander, that the defendant and other members of the 200 committed.

On October 2, 2014, the defendant, Marcos Espinal, a/k/a "Ito" ("Espinal"),[1] and other members of the 200 traveled in Espinal's father's burgundy Chevrolet Astro Van (the "Burgundy Van") to the vicinity of Saint Nicholas Avenue and West 193rd Street in Manhattan, which is 193 territory. They arrived in the early evening, when it was still light out and the streets were full of people. The defendant, wearing a white hoodie and multicolored pants, Espinal, and two other 200 members got out of the Burgundy Van and walked up Fairview Avenue to the corner of Fort George Hill, where it becomes Saint Nicholas Avenue. As soon as they reached the corner, the defendant and Espinal pulled out guns and began firing at a group of people gathered in front of 1653 Saint Nicholas Avenue. The defendant and Espinal fired at least 15 shots toward the group of people, fatally striking Orlando Rivera, an innocent bystander, and wounding two others, including a 17-year old girl. Their intended target was a member of 193 and the defendant, Espinal, and the other 200 members carried out the shooting in retaliation for acts of violence by 193 members against 200 members.

After the shooting, the defendant, Espinal and the other 200 members fled the scene down Fairview Avenue and got back into the Burgundy Van. They then drove to a parking lot located at 21-23 Hillside Avenue, approximately half a mile away from the shooting, and parked. the, Espinal, and three other individuals got out of the Burgundy Van and walked away. When Pabon got out of the van, he was wearing a red vest with the same multicolored pants from the shooting and carrying his white hoodie in his hand.

---

[1] On October 3, 2014, Espinal was charged with the murder of Orlando Rivera in New York County Criminal Court and pled guilty of charges related to the murder on July 7, 2017. Espinal was sentenced to 17 years' imprisonment and is currently serving his sentence.

As demonstrated through cooperator testimony at trial, members of the 200 spoke about the murder and how the defendant was one of the shooters. The defendant was proud of his role in the killing and bragged that it was a bullet from his gun that killed Orlando Rivera.

### D. Procedural History of the Case

On September 12, 2018, a grand jury returned a superseding Indictment S1 18 Cr. 319 (LTS) (the "Indictment"), charging the defendant in three counts. Count One charged the defendant and others with participating in a racketeering conspiracy between in or about 2014 and in or about September 2018, namely "the 200" enterprise (the "200 Enterprise"), in violation of Title 18, United States Code, Section 1962(d). Count Two charged the defendant with murder in aid of racketeering and aiding and abetting the same for the murder of Orlando Rivera on or about October 2, 2014, in violation of Title 18, United States Code, Sections 1959(a)(1) and 2. Count Three charged the defendant with murder with a firearm and aiding and abetting the same for the murder of Orlando Rivera in violation of Title 18, United States Code, Sections 924(j) and 2. On May 11, 2022, a jury convicted the defendant of Counts One and Two[2] after a seven day trial before Judge Sidney H. Stein. Because the defendant was convicted of murder in aid of racketeering, the Court is required to impose a sentence of life imprisonment.

## II. Discussion

### A. Applicable Law

Although *United States* v. *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;

---

[2] The Government elected not to proceed on Count Three.

  (C) to protect the public from further crimes of the defendant; and
  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. A Sentence of Life Imprisonment is Appropriate in this Case.

  The Government respectfully submits that the mandatory sentence of life imprisonment is sufficient, but not greater than necessary, in this case to reflect the seriousness of the defendant's conduct, promote respect for the law, and provide just punishment for the offense.

  At the outset, a sentence of life imprisonment is sufficient to reflect the seriousness of the defendant's crimes and the harm that he caused in the community over the span of several years. For years, the defendant was a member of the 200, a violent gang that committed numerous dangerous crimes, including murder, shootings, robberies, and drug trafficking. The defendant was among the gang's most violent member—he was one of its shooters who ngaged in all of the aspects of the gang's criminal activities. The defendant engaged in breaking, the dangerous practice of tricking drug dealers out of money or drugs. The defendant also participated in attempted robberies, during which he carried a gun and was prepared to use violence. The defendant's specific role in the 200 was to carry a gun and to carry out violence whenever the gang deemed it necessary—and he fulfilled that role.

  In his role as a shooter in the 200, the defendant traveled to 193 territory with Espinal and other 200 members on October 2, 2014. Their plan was to shoot at a member of 193 in retaliation for acts of violence that 193 committed against 200 members. When the defendant and his fellow 200 members arrived in the area of Saint Nicholas Avenue and 193rd Street, their target was standing with a group of people in front of 1653 Saint Nicholas Avenue. It was early evening on a nice fall day and the street was full of people. Children were playing outside and people were going about their daily lives. But the defendant did not hesitate to pull out his gun and start shooting in the middle of that crowded street. He and Espinal sprayed at least 15 bullets across the sidewalk, striking three people and killing Orlando Rivera. Orlando Rivera was an innocent bystander who just happened to be in the wrong place at the wrong time. And the defendant has never shown remorse for his actions—in fact, he bragged that it was a bullet from his own gun that killed Orlando Rivera. Even knowing that they killed the wrong guy—someone not at all involved in the violent dispute between the 200 and 193—the defendant was still proud of himself for carrying out a senseless and brutal act of violence that cut a life short.

  As a violent member of the 200 operating in the Dyckman area for years, the defendant was a key reason why that neighborhood has been ravaged by violence, drug addiction, and brokenness for years. And while the defendant may have faced challenges growing up, by his own account, he was raised by parents who moved him out of the dangerous neighborhoods in upper Manhattan to try to get away from the difficult circumstances they faced. But the defendant chose to go back to Dyckman and become a core member of the 200, a crew that sold drugs and committed acts of violence throughout their neighborhood. As a shooter for the 200, posting about his gang membership on social media and bragging about his violent exploits, the defendant was

part of a culture of endless retaliatory violence, that deprived children of the opportunity to be cared for by their parents, and to ensured that countless addicts ruin their lives by supplying them with drugs that destroy their minds and their bodies.

Because of the defendant's involvement in this murder, Orlando Rivera—who was just 42 years old—was unable to experience the rest of his life and grow old with his friends and family. Orlando Rivera was a father, a cousin, a friend. His son, only a teenager when his father was brutally murdered, had to grow up without a father and experience the trauma of knowing that his father was killed in a senseless act of violence. Orlando Rivera never got to see his son grow up or to celebrate life milestones with his friends and family. The defendant's role in murdering an innocent bystander shows a complete indifference to human life. A respect for the value of Orlando Rivera's basic human dignity demands a very serious sentence.

### IV. Conclusion

For the reasons set forth above, the mandatory sentence of life imprisonment is sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: __/s/_____
Elizabeth A. Espinosa / Rushmi Bhaskaran /
Adam S. Hobson
Assistant United States Attorneys
(212)-637-2484 / 2439 / -2216

cc:   Counsel for Christian Pabon (by CM/ECF)