MB9BPABS1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                          18 Cr. 319 (SHS)

CHRISTIAN PABON,

            Defendant.

                              Sentence

------------------------------x

                              New York, N.Y.
                              November 9, 2022
                              5:00 p.m.

Before:

                 HON. SIDNEY H. STEIN,

                              District Judge

                   APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  ELIZABETH A. ESPINOSA
     RUSHMI BHASKARAN
     Assistant United States Attorneys

ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP
     Attorneys for Defendant
BY:  JEREMY SCHNEIDER

ELIZABETH E. MACEDONIO, P.C.
     Attorneys for Defendant
BY:  ELIZABETH E. MACEDONIO

MB9BPABS1

1          (Case called; appearances noted)

2          THE COURT:  Mr. Pabon is here.  Please be seated in

3     the courtroom.  We're here for the sentencing of Mr. Pabon, but

4     my deputy tells me there's an issue that the defense wishes to

5     raise. Sir.

6          MR. SCHNEIDER:  Yes.  Thank you, your Honor.

7          Ms. Macedonio and I spoke to Mr. Pabon today, and he

8     has informed us that he would request your Honor exercise its

9     discretion and grant postponement to the sentence for the

10    following reasons:

11         He still has not been able to -- because of the

12    lockdown at MDC, he hasn't had a chance to get all the

13    paperwork that he needs, whether they be transcripts or

14    documents or motions that he would like to have prior to

15    sentence.  Also, if he happens to get designated and shipped

16    out.  It's much more difficult to get the property that he

17    needs, paperwork there as opposed to having it with him.

18         THE COURT:  What is the paperwork?  Well, why don't

19    you tell me if there are a series of reasons, what they are, so

20    that I can evaluate them.

21         One reason is he doesn't have paperwork that he wants?

22         MR. SCHNEIDER:  Correct, your Honor.

23         THE COURT:  What does that mean, do you know?

24         MR. SCHNEIDER:  Transcripts, docket sheets.

25         THE COURT:  Do you have everything you believe you

MB9BPABS1

1    need?

2          MR. SCHNEIDER:  Me personally?

3          THE COURT:  Yes.

4          MR. SCHNEIDER:  I believe I have, yes.

5          THE COURT:  His lawyer.

6          MR. SCHNEIDER:  I'm his lawyer, yes.  Ms. Macedonio

7    and I have do have whatever we need, yes.

8          THE COURT:  Have you talked to him about what he

9    thinks he wants you to have in addition?

10          MR. SCHNEIDER:  It's not but what we need.  It's about

11    what he wants, your Honor.  He hasn't seen the trial

12    transcript.  That's what he wants.  I have it.  Ms. Macedonio

13    has it, but he's talking about what he needs, not what he

14    thinks I need.  That's not the issue, your Honor.

15          The second issue, your Honor, while you see he does

16    have family here in court --

17          THE COURT:  And I would think that's a reason to

18    proceed with the sentencing here today.  I do see he has family

19    here today.

20          MR. SCHNEIDER:  Comma, but there are other family

21    members who were.  Because his sentence has been postponed a

22    number of times and they took off those times, they could not

23    be here. So he would like the other family members to be here

24    as well.  And the final reason, your Honor, is because of Covid

25    and a number of lockdowns at the MDC, he hasn't had sufficient

MB9BPABS1

1  time to have family visits with his family while he's here

2  before he gets designated to discuss what's about to happen.

3          THE COURT:  To discuss what?

4          MR. SCHNEIDER:  To discuss what's about to happen to

5  him.  He's going to get life.  Every knows that, okay.  So

6  because family visits have been severely restricted, if not

7  altogether eliminated because of Covid and a number of various

8  lockdowns, he has not had family visits in many, many months,

9  and sometimes even, I think, years at a time.

10          THE COURT:  Wait.  Let me try to understand.  He has

11  not had family visits because of lockdowns --

12          MR. SCHNEIDER:  Yes.

13          THE COURT:  -- for an adequate number of family

14  visits.  I understand that.  That makes sense to me.  As a

15  result of the lack of family visits that he would like to have,

16  why is he asking for an adjournment?

17          MR. SCHNEIDER:  He's asking so he can remain at the

18  MDC so he can, A, have the paperwork that he wants; and B,

19  speak to his family and see his family before he gets

20  designated.  Because there's a chance that he may get

21  designated far away no matter what your Honor may or may not

22  recommend.

23          As your Honor may remember from our submissions, his

24  family has certain health conditions, as does he.  So given

25  that, he would like to spend some more time with his family

MB9BPABS1

1     before he's shipped away to a BOP designation.

2              THE COURT:  Well, that can be taken care of.  First of

3     all, most defendants want to get out of the MDC as quickly as

4     possible.

5              MR. SCHNEIDER:  Understood.

6              THE COURT:  And indeed, recently, I have been

7     recommending to the BOP that the defendant who I would have

8     just been sentenced be sent to the permanent institution as

9     quickly as -- as expeditiously as feasible because the theory

10    is there's more programming available.  There's more

11    educational programming available.  There's more vocational

12    programming available. There's more outdoor space and outdoor

13    exercises and exercise facilities.  By and large, those

14    facilities are much better for defendants than the MDC.

15             MR. SCHNEIDER:  Mr. Pabon and I have discussed that,

16    and just that issue as you're speaking about it right now.  And

17    knowing that, he still has asked Ms. Macedonio and I to jointly

18    recommend.

19             THE COURT:  All right. Thank you.  Is there another

20    reason, sir?

21             MR. SCHNEIDER:  No, those are the reasons that he's

22    articulated to me.

23             MS. MACEDONIO:  May we have one moment, your Honor?

24             THE COURT:  Yes, of course. What was reason number

25    two?  My notes say postponement, that was to talk to the

MB9BPABS1

1  family.

2          MR. SCHNEIDER:  Yes, he had other families who could

3  not be here because they are worked.  that was the second

4  reason.

5          THE COURT:  Talk to him.

6          (Pause)

7          MR. SCHNEIDER:  Your Honor, there's another reason,

8  which I guess is kind of like a non -- he wants his family to

9  be ready for this, okay.  That's kind of where we are.  He

10  wants, as we all know -- and I'm going to say it again later --

11  there's no surprise as to what sentence he's going to get.  But

12  he wants to be able to prepare himself, and mostly his family

13  with what's about to happen.  And he thinks by having more

14  visits with them in a situation that is more conducive to his

15  custody prior to the sentence, he thinks that it would be

16  easier for his family and him to fully grasp, comprehend and

17  accept the sentence that he's about to get.

18          THE COURT:  I understand that.  Does anyone know how

19  many adjournments of this sentencing there have been, and when

20  it was first scheduled for?

21          MR. SCHNEIDER:  If you give me a few minutes.

22          THE COURT:  My deputy is looking at that as well.

23          MR. SCHNEIDER:  Your Honor, I think I may have a

24  answer for you if you need.

25          THE COURT:  Yes.

MB9BPABS1

1    MR. SCHNEIDER:  I believe it was originally scheduled

2    for October 13, and then it was postponed to November 2nd, and

3    then it was postponed to November 3rd, and then November 9th.

4        THE COURT:  Our notes, my deputy indicates that the

5    ECF indicates that it was originally scheduled for August 18th.

6    It was then adjourned to October 13th, at the request of the

7    defense.  So it was originally set for August 18th, then

8    adjourned to October 13th, at the request of the defendant.

9    And then adjourned at the request of the defendant to November

10   2nd, maybe the 3rd.  And then because I had trial last week, it

11   was then adjourned by the Court to today, so the process has

12   been going on since August 18th.

13       I'm sympathetic to the defendant's requests, but I'm

14   denying the request for the adjournment.  The attorneys have

15   everything they need.  They've indicated that the defendant can

16   be given access to the trial record.  He certainly can take a

17   look at that.  He's entitled to it.  The postponement so that

18   other family members can be here because there were other dates

19   that were scheduled where they did come, so now they can't

20   come.  I understand that as well, but presumably it's always

21   possible that there always will be additional family, some

22   family members, who can't come to court.

23       I appreciate the fact the family members are here in

24   support of the defendant.  It's important for the defendant to

25   see that, but I don't think it's a adequate reason to postpone

MB9BPABS1

1  this sentencing because some family members are not here even

2  though some are.

3         In terms of he wishes to stay where he is.  Again,

4  most people want to get out of the MDC as quickly as possible

5  given the conditions of confinement there.  If this defendant

6  wants to remain, I certainly will recommend that at his request

7  he be retained for, let's say, additional two months consistent

8  with BOP requirements in order for him to see his family.  But,

9  again, that will always be the case.  It's always good to have

10  family visits.  And so I'm denying the request for an

11  adjournment.

12         It's time, and I think the other point is as

13  Mr. Schneider has said several times, everyone knows what's

14  going to happen under the statute.  The defendant is going to

15  be sentenced to life imprisonment, and that was going to happen

16  whether it's today or whether we adjourn it.  Given the fact

17  that it's been adjourned a number of times, I'm going to deny

18  the request for an adjournment.

19         Now, I have the following information.  I have the

20  presentence report revised on August 17th, along with the

21  addendum and the sentencing recommendation on an offense level

22  of 43, and criminal history category of II, of a guideline

23  range of life incarceration on each of Counts One and Two to be

24  served concurrently.  In addition to that, I have the defense

25  submission of Mr. Schneider dated September 22, which is ECF

MB9BPABS1

1   document 581.  The PSR is ECF document 577, and the defense

2   submission understands that there's a mandatory life sentence

3   here, that's at page seven in the conclusion.  But the

4   submission says accordingly the defense respectfully submits

5   that a mandatory life sentence is greater than necessary and

6   flies in the face of the goals sought in 18 U.S.C. 3553(a)(2).

7   Their request there is that you be sentenced to a facility in

8   the northeast region, and I certainly will grant that

9   recommendation.

10          MR. SCHNEIDER:  Your Honor, I'm sorry, just about

11  that.  After speaking to Mr. Pabon, he has asked us to withdraw

12  that request.

13          THE COURT:  All right.  Then I won't.  And the

14  submission dated September 22, contains a number of letters in

15  support of Mr. Pabon, and they're quite heartfelt and I've read

16  all of them obviously.

17          MR. SCHNEIDER:  Your Honor, I really apologize for

18  interrupting. Mr. Pabon informs me that he wants that

19  recommendation that he be --

20          THE COURT:  You'll talk to the client.  And at the end

21  of the sentence when I make the recommendations to the Bureau

22  of Prisons, you can let me know what the defense is requesting.

23          MR. SCHNEIDER:  I apologize.  Thank you.

24          THE COURT:  That's all right.  I also have a response

25  of the government dated September 29, which is document 582.

MB9BPABS1

1    The conclusion is the mandatory life, according to the

2    government, for the reasons set forth above, the mandatory

3    sentence of life imprisonment is sufficient, but not greater

4    than necessary to serve the legitimate purposes of sentencing.

5         I also should note that I have the government's letter

6    dated August 31, which is ECF 580.  I'll refer to it as the

7    relative culpability letter which the government sets forth its

8    view of the relative culpability of the various co-defendants

9    in this case and in 17 Cr. 513.

10        Mr. Schneider, is there any additional information I

11   should have, written information I should have?

12        MR. SCHNEIDER:  Not written.

13        MS. ESPINOSA:  Your Honor, the government yesterday or

14   the day before, a victim impact statement.

15        THE COURT:  I'm sorry.  Yes, I do have that. I should

16   have mentioned that.  It's a victim impact statement, very

17   heartfelt given to me yesterday.  Mr. Schneider, I take it you

18   have that?

19        MR. SCHNEIDER:  I have seen it, yes.

20        THE COURT:  All right.  That's all the written

21   information I have.  Government, that's it, in terms of the

22   written information the government believes I should have?

23        MS. ESPINOSA:  Yes, your Honor.

24        THE COURT:  Mr. Schneider, have you and your client

25   read and discussed all this information?

MB9BPABS1

1        MR. SCHNEIDER:  Yes, your Honor.

2        THE COURT:  Do either you or he have any objections to

3   the findings of facts in the presentence report?

4        MR. SCHNEIDER:  The only issue with the findings of

5   fact is that the case went to trial, so there's certain -- they

6   took the testimony.  They took the information in the PSR from

7   the trial testimony, which we may -- of course he went to

8   trial, obviously he disagreed with.

9        THE COURT:  That I understand.

10        MR. SCHNEIDER:  Other than that, nothing other than

11   that.

12        THE COURT:  Government, any objections to the findings

13   of fact?

14        MS. ESPINOSA:  No, your Honor.

15        THE COURT:  I hereby adopt the findings of fact in the

16   presentence report. Mr. Schneider, I think you've said it.

17   It's mandatory life sentence here concurrent on Counts One and

18   Two, and I intend to impose the conditions set forth requested

19   by the probation department.

20        Is there a forfeiture order that I've signed here?

21   What's the position of the government with regard to

22   forfeiture?

23        MS. ESPINOSA:  Your Honor, there is no forfeiture that

24   we're seeking here.  We would ask for 90 days on restitution.

25   There may be a small amount of restitution we will seek, but

MB9BPABS1

1  we'll confer with defense before.  We just ask for 90 days to

2  complete that.

3          THE COURT:  Defense, any objection to that?

4          MR. SCHNEIDER:  No.

5          THE COURT:  I'll give the government -- I'll give them

6  90 days to submit an agreed upon restitution order.  But submit

7  it before 90 days if you're going to have it.  All right?

8          MS. ESPINOSA:  We'll do our best, your Honor.

9          THE COURT:  And if there are competing orders,

10  obviously get them in before 90 days. That's my intention.  I

11  think you're entitled to my current view.

12          With all of that in mind, Mr. Schneider, what would

13  you like to tell me?

14          MR. SCHNEIDER:  Your Honor, may I remain seated?

15          THE COURT:  Of course.

16          MR. SCHNEIDER:  Thank you so much.  Appreciate it.

17  There are no surprises here.  I understand that, and there's no

18  suspense.  I think I do disagree with one thing your Honor

19  said.  It's a mandatory life count for Count Two.  Count One is

20  not a mandatory life count.  It's a guideline recommendation

21  with no mandatory minimum, so your Honor can give less, and I

22  will discuss that in a few moments.

23          THE COURT:  You're quite right.  The mandatory is for

24  Count Two, murder in aid of racketeering, and not for

25  racketeering conspiracy.  You're right. What would the import

MB9BPABS1

1    of that be?

2              MR. SCHNEIDER:  Well, the import would be any number

3    of things.  Number one, if by some chance Count Two gets

4    reversed, Count One, there's a different sentence.  If there's

5    an issue down the road with a motion for compassionate release,

6    that could be effected.  If down the road there's a change in

7    the law, that can be effected.  So that's why your Honor has

8    some discretion with Count One, but not Count Two, so that's

9    why I think it does matter.

10             (Continued on next page)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MB9HPab2

1           THE COURT:  OK.

2           MR. SCHNEIDER:  Now, even though I recognize what the

3     law is, it's our position that --

4           THE COURT:  What is the guideline, not mandatory?  The

5     guideline range is life, right?

6           MR. SCHNEIDER:  It's 43.  Yes, it's life, correct.

7     Again, not mandatory, just as your Honor --

8           THE COURT:  Advisory.  I understand that.

9           MR. SCHNEIDER:  Correct.  I want to make sure I

10    understand.  Count Two is mandatory.  Count One is a

11    recommendation of life, but not mandatory.

12          THE COURT:  Right.

13          MR. SCHNEIDER:  OK.

14          THE COURT:  We're agreed.

15          MR. SCHNEIDER:  Thank you.

16          I guess my concern, your Honor, is to have a life

17    sentence in general is something that just doesn't seem fair

18    because the consider the individual calculations or individual

19    characteristic traits of a person under 3553(a).  It doesn't

20    really evaluate who the person was, is, and more importantly,

21    who he will be.  I think the important part is that it doesn't

22    allow for rehabilitation.  It doesn't allow for hope.  What if

23    at some point in the next five, ten, 15, 20, or 30 years,

24    Mr. Pabon is a model prisoner, is someone who has taken

25    courses, has done well, has done all kind of good things?  It

MB9HPab2

1    seems to me that would be an appropriate discretion at that

2    time for possible release, but in the situation as we have now

3    with mandatory life sentences, that doesn't exist, and I think

4    that's not really appropriate or doesn't seem just.

5          It also doesn't provide for the possibility that he

6    may be someone who in the future can contribute to society and

7    in the future may no longer be a danger to the society.  So

8    that's what mandatory life doesn't really take into

9    consideration.

10          So one of the things we said in our sentencing

11    submission is that we wanted to paint a picture for who

12    Christian was, and we think you should know who he is even

13    though you don't have a choice.

14          He's someone with a heart condition since he's been a

15    child.  He's had trouble in school since he's been also a young

16    child with language, with comprehension, with reading, with

17    speech, auditory issues, with memory issues.  He's someone

18    who -- so while there's been no "technical abuse" in the

19    family, the way we all know of sexual abuse, physical abuse,

20    mental abuse, drug abuse, none of that, but there are a number

21    of conditions in his life that shaped who he is and a number of

22    events that you should be aware of which we mentioned in our

23    submission, but I'd like to just highlight a few of them.

24          He has a loving family.  You read the letters.  His

25    family is here.

MB9HPab2

1          THE COURT:  He has excellent relations with his

2    parents.

3          MR. SCHNEIDER:  Yes.

4          THE COURT:  And he lives with the family in

5    Pennsylvania.

6          MR. SCHNEIDER:  Yes.

7          THE COURT:  This is a case where he had a real chance

8    to get away from the streets, and unfortunately, either he ran

9    back to the streets or the streets reached up and grabbed him

10   in Pennsylvania and dragged him back to the streets.

11         MR. SCHNEIDER:  All true.  This is a different speech.

12   Normally, I make a speech about how the people have come from a

13   terrible upbringing; their parents were abusive, etc.

14         THE COURT:  I've heard it.

15         MR. SCHNEIDER:  You've heard it, like I said.

16         THE COURT:  From you.

17         MR. SCHNEIDER:  Unfortunately, too often for both of

18   us, to have to say it, for you to have to hear it.  But the

19   fact is, although he has a loving family, the relationship, the

20   dynamics in that family was very complicated, and I'd rather

21   not go into it now, but your Honor has seen our submission.

22         Also, there is something that affected him

23   dramatically, and unfortunately went untreated for his whole

24   life, is that he saw -- he was present when he was a young

25   child, I think when he was ten years old with his family, where

MB9HPab2

1    his mother was arrested, wrongfully arrested, put in jail.  He

2    was taken away from them.  Family members were handcuffed.

3            THE COURT:  No, I read it.  I know it all.

4            MR. SCHNEIDER:  OK.

5            THE COURT:  I know that incident and how it has

6    affected him and especially his mother.

7            MR. SCHNEIDER:  Thank you.

8            It also affected him, because it's basically PTSD

9    untreated.  Think as a young child how you deal with that,

10   seeing that happen to your family or mother.  You're right, the

11   family did a good thing.

12           THE COURT:  And they convey unwavering support for

13   him.  That's paragraph 47.  So that's all excellent.  And he's

14   not married.  He doesn't have children, so he doesn't have

15   those obligations that he has to be concerned about while

16   incarcerated.  He can focus full time on becoming a better

17   person.

18           MR. SCHNEIDER:  He doesn't have those obligations.

19   You also did see letters from his -- I think his cousin who

20   talked about the relationship with.

21           THE COURT:  A lot of letters, as the report says, of

22   unwavering support.

23           MR. SCHNEIDER:  Not just support, but our submission

24   had the actual letters from his family which talked about how

25   his nieces and nephews have a special bond with him.

MB9HPab2

1         THE COURT:  Yes.

2         MR. SCHNEIDER:  Finally, your Honor, his cousin Jason,

3    who is about 20 years old, who was more like a brother to him

4    than a cousin, committed suicide out of nowhere in a very

5    violent way.  He jumped in front of a train, which is just a

6    terrible thing to think about.  And that, again, Mr. Pabon had

7    to deal with untreated, in a way that made him who he is to do

8    whatever he had to do.

9         So while his family is here and they have supported

10   him and will support him forever, also because of COVID and the

11   lockdowns and what he's had to experience, it just seems like

12   if your Honor had the discretion, I would have hoped that your

13   Honor would give him a sentence of less than life.  Granted,

14   Count Two is mandatory life.  And we do suggest, by the way,

15   that on Count One you give him a sentence of 17 years, and we

16   arrive at that because, you're right, in the government's

17   letter from August 31 when they talked about relative

18   culpability of the other people in the gangs, they did not

19   mention Marcos Espinal, Marcos Espinal was the other shooter

20   who was there at the time according to the government's own

21   witnesses.  He pled guilty in state court, and he got a

22   sentence of 17 years.  That was the sentence that could very

23   well have been appropriate had there not been a mandatory life

24   count here.

25        So all that being said, I would ask your Honor to give

MB9HPab2

1    a mandatory life sentence because you have no choice, but on

2    Count One give him a sentence of 17 years, because in terms of

3    relative culpability, Marcus Espinal is the one who is the

4    closest to Christian Pabon in terms of what sentence he got.

5    So that's where we are right now.  Once your Honor imposes

6    sentence, Ms. Macedonia and I have another application once

7    we're done here.

8            THE COURT:  All right.  What do you do with

9    paragraph 31, sir?  Defendant has been disciplined several

10   times for incidents involving assault with serious injury,

11   disobeying an order, possessing a hazardous tool, using

12   drugs/alcohol, possessing drugs/alcohol two occasions,

13   destroying an item during a search, disruptive conduct, and

14   fighting.  What do you do with that?

15           MR. SCHNEIDER:  What do I do with that?  I look at --

16   I'm a kind of a half full kind of guy, OK?  There's no violence

17   there.  There's no injury to anybody.  There's no damage to

18   property.  He didn't stab anybody or cut somebody.  And as your

19   Honor knows full well, living in the hell hole of MDC in

20   general, separate and apart from COVID, separate and apart from

21   lockdowns, is a nightmare.  Being someone who is --

22           THE COURT:  That's why I'm -- without adopting the

23   "nightmare" phrase, that's one of the reasons I'd like to get

24   him out of there.

25           MR. SCHNEIDER:  Well, I understand that and he

MB9HPab2

1    recognizes that, but he's made that choice as an adult.  So

2    that seems to me what he would like to do.  When your Honor --

3    he understands that you're not going to do it, but he's aware

4    of his charges, and he's made that choice.

5              So paragraph 31 refers to living in a nightmarish

6    situation where he's branded as a gang member, and your Honor

7    knows there's other gang members there.  There are other acts

8    of violence there.  And unfortunately, you have to deal with

9    what you have to deal with.  So am I justifying it, no?  Am I

10   mitigating it?  I hope, yes, because, again, those things,

11   while they are all violations -- again no injuries, no use of

12   the weapon --

13             THE COURT:  I understand.

14             MR. SCHNEIDER:  That's our view of paragraph 31, your

15   Honor.

16             THE COURT:  All right.  Thank you.  Let me hear from

17   the government.

18             MS. ESPINOSA:  Thank you, your Honor.

19             The government here thinks that a life sentence on

20   both counts as recommended by probation is sufficient, but not

21   greater than necessary, to serve the purposes of sentencing.

22   Here, the conduct for which the defendant was convicted is

23   incredibly, incredibly serious.  It resulted in the murder of

24   an innocent man, Orlando Rivera, who just happened to be in the

25   wrong place at the wrong time.

MB9HPab2

1          I won't belabor the trial record, your Honor.  I'll

2    just note that the defendant was convicted for racketeering

3    conspiracy for his role in the 200, a violent street crew that

4    committed robberies, home invasions, drug dealing.  The

5    defendant himself was a shooter in that gang.  His role was to

6    commit acts of violence for the gang.  And then on October 2,

7    2014, the defendant and other members of the 200 traveled to

8    193 territory, the rival crew's territory, with guns, opened

9    fire on a crowded public street in the early evening and struck

10   three people, including a fatal shot to Orlando Rivera.

11          Now, this particular indiscriminate act of violence is

12   really incredibly -- it's difficult to capture the severity of

13   this.  This was not spur of the moment.  This was not a heated

14   incident.  This group of gang members, members of the 200,

15   including Pabon, traveled to 193 territory with guns, got out

16   of a car, walked up to the counter -- or to the corner, and

17   fired off at least 15 shots, knowing it was a crowded street,

18   there were children playing nearby, there were people

19   everywhere, and they were acting with complete disregard for

20   the lives of those people.

21          And the defendant was proud of his involvement in the

22   shooting.  As the record showed at trial, he bragged about it.

23   He was happy that he had a body.  It gave him street cred.  It

24   gave him status in the gang.

25          THE DEFENDANT:  They lied about that.

MB9HPab2

1    THE COURT:  You'll have an opportunity to address the

2    Court, Mr. Pabon.

3    MS. ESPINOSA:  I mean --

4    THE DEFENDANT:  They fuck the streets up.  These are

5    people that lie on me.

6    THE COURT:  Mr. Pabon, you'll have an opportunity to

7    address the Court.  I'll give you a full opportunity, sir.  I

8    gave your lawyer an opportunity.  I now am giving the

9    government an opportunity, and then I'll give you.

10    THE DEFENDANT:  Sorry, your Honor.  They lied on me.

11    Those people lied on me.

12    THE COURT:  Go ahead.

13    MS. ESPINOSA:  As the evidence at trial showed, your

14    Honor, the defendant and other members of the 200 knew they

15    shot and killed an innocent bystander that day.  They knew they

16    didn't hit a rival gang member, and they were still proud of

17    it.  They weren't sorry for taking that life.

18    Your Honor, I'd like to spend a few minutes talking

19    about the victim, about Orlando Rivera.  Your Honor saw the

20    incredibly heartbreaking statement from the victim's son.

21    THE COURT:  I read it.

22    MS. ESPINOSA:  And, your Honor, I think it is

23    important to sit and remember for a second that Orlando Rivera

24    was only 42 years old when he was killed that day.  He was a

25    father.  He was a son.  He was a friend.  He was a beloved

MB9HPab2

1    member of his community, and because of the defendant's actions

2    that day, he never went home.  He didn't get to see his son

3    grow up.  Never got to meet his granddaughter.  He never got to

4    hug his mother again.  He never got to go to any of the parties

5    that his son referenced he loved going to.  All of those

6    moments, big and small, of his life were taken away because of

7    the defendant's actions.

8            I think that's the point we want to end on, your

9    Honor, because of those actions, because of the murder of

10   Orlando Rivera that was just so incredibly senseless, a life

11   sentence on both counts is appropriate here.

12           THE COURT:  All right.  Thank you.

13           Mr. Pabon, you have the opportunity to address me,

14   sir.  You don't have to say anything.  And I do wish to tell

15   you that anything you say can be used against you, but I'm here

16   to listen to whatever you want to say.  I presided over the

17   trial.  I remember the trial quite well.  Please, sir, if you

18   wish to address me, now is the time.

19           THE DEFENDANT:  I just want to apologize to my family.

20   There was a lot of charges they found me guilty of that I

21   wasn't guilty of.  Those people lied on me.  And like I said, I

22   just want to say I'm sorry to my family.  I love my family, and

23   I'm a good man.  I'm not the man that they're portraying me to

24   be.  That's all I got to say, your Honor.

25           THE COURT:  Thank you, sir.  I appreciate that.

MB9HPab2

1        All right.  Please rise, and I will impose sentence.

2        Before I formally impose sentence, first, I want to

3   adopt the findings of fact.  I believe I already did so, but if

4   I did not, I now do.

5        Secondly, I wish to ask the defense if there's any

6   formal objection they wish to lodge before I impose sentence,

7   Mr. Schneider?

8        MR. SCHNEIDER:  No.

9        THE COURT:  Ms. Macedonio?

10        MS. MACEDONIO:  No.

11        THE COURT:  I hereby find that the total offense is

12   43, the criminal history category is II, the guideline range is

13   life on each count, and as Mr. Schneider properly said,

14   appropriately said, it's mandatory life under the statute on

15   Count Two.

16        The sentence that I am imposing pursuant to the

17   Sentencing Reform Act of 1984 is the judgment of this Court

18   that the defendant, Christian Pabon, is committed to the

19   custody of the Bureau of Prisons to be imprisoned for a term of

20   360 months on Count One and life on Count Two, to be served

21   concurrently.  So that's a below life sentence on Count One,

22   and it's a variance.

23        The reason is Count One is racketeering conspiracy,

24   and Count Two is murder in aid of racketeering, which is

25   reflected in the statutory requirement that in this case it

MB9HPab2

1  would be mandatory life.  Congress viewed it as a more serious

2  crime, racketeering conspiracy, especially one which led to the

3  defendant firing that weapon.  I saw videos of it.  Killing

4  Rivera in the way he did is -- I think the word is quite right,

5  it was horrific.  Nonetheless, I think life on Count One is

6  greater than necessary to meet the ends of the criminal justice

7  system.

8          So it's going to be 360 on Count One and life on Count

9  Two to be served concurrently.

10         Upon release from imprisonment, Mr. Pabon shall be

11  placed on supervised release for a term of five years on each

12  count to run concurrently with the conditions recommended by

13  the probation department, namely, he shall serve those five

14  years of supervised release with the mandatory conditions that

15  are set forth on page 36 of the presentence report.  He also

16  shall comply with the standard conditions set forth on page 36

17  and 37 of the presentence report.  That's standard conditions 1

18  through 12.

19         Within 72 hours of release from the custody of the

20  Bureau of Prisons, Mr. Pabon shall report in person to the

21  probation office in the district in which he is released.  He

22  shall also comply with the special conditions set forth on

23  pages 37 and 38 of the presentence report, that is,

24  participation in an outpatient treatment program is one.  Two

25  is the search condition.  Three is he must provide his

MB9HPab2

1    probation officer with access to all requested financial

2    information.

3              And I'm going to change special condition No. 4 as

4    follows:  He shall not associate or interact in any way,

5    including through social media, websites with any members and

6    associates of the 200 gang and the Bloods gang, specifically

7    the Sex Money Murder set of the Bloods gang, or frequent

8    neighborhoods known to be controlled by the 200 or the Sex

9    Money Murder set of the Bloods gang.  So I'm narrowing that a

10   bit.

11             I recommend that he be supervised by the district of

12   residence.

13             I'm not imposing a fine, because I find Mr. Pabon

14   lacks the ability to pay a fine, taking into account his

15   limited earning ability and his lack of assets and his modest

16   income.

17             I'm giving the government -- I'm giving the parties 90

18   days in which to submit a proposed restitution order.  I'm not

19   imposing forfeiture because none is being sought by the

20   government.

21             I hereby order Mr. Pabon to pay to the United States a

22   special assessment of $200, which is due immediately.

23             My reason for the sentence is I have sentenced the

24   defendant at the guideline range on Count Two, murder in aid of

25   racketeering, which is mandatory life, and on Count One, I have

MB9HPab2

1   sentenced him to 360 months, which is a downward variance from

2   the guideline range of life because I believe it is sufficient,

3   but not greater than necessary, to meet the ends of the

4   criminal justice system given, in part, the promise I believe

5   the defendant has to lead a law-abiding life if he is released

6   from prison and the strong family support he has at this time.

7           What's the recommendation you're asking for, sir, at

8   this point in regard to anything?

9           MR. SCHNEIDER:  Yes, thank you.

10          We have spoken to Mr. Pabon, and he would like to ask

11  your Honor to recommend to the Bureau of Prisons that he be

12  designated to a facility either in or as close to Pennsylvania

13  as possible to make his family easier to visit.

14          THE COURT:  I'll recommend that he be housed in the

15  northeast region in order to facilitate visits with his family

16  which resides in Pennsylvania.  I also recommend that he not be

17  sent to his permanent place of designation for at least 60 days

18  from the entry of the judgment in this case in order to

19  facilitate both the designation to a permanent facility and

20  also to assist in facilitating family visits that Mr. Pabon

21  wants to have prior to his being sent to the permanent place of

22  designation.

23          Mr. Schneider, are you aware of any legal reason why

24  this sentence should not be imposed as I have stated it?

25          MR. SCHNEIDER:  No, sir.

MB9HPab2

| | |
|---|---|
| 1 | THE COURT:  Ms. Espinosa? |
| 2 | MS. ESPINOSA:  No, your Honor. |
| 3 | THE COURT:  Is there anything -- I'm sorry.  I hereby |
| 4 | order the sentence to be imposed as I have stated it. |

5          Is there anything in our discussion at the beginning

6     of the case that the parties ask me to recommend, or have I

7     taken care of that by virtue of talking about his being kept at

8     the MDC now?

9          MR. SCHNEIDER:  I think we're all good, your Honor.

10    Thank you.

11         THE COURT:  All right.  Thank you.

12         Mr. Pabon, you have the right to appeal the sentence I

13    have imposed on you.  If you cannot pay the cost of an appeal,

14    you have the right to apply for leave to appeal *in forma*

15    *pauperis*.  If you make a request, the clerk of court will

16    prepare and file a notice of appeal on your behalf immediately.

17         Do you understand your appeal rights, sir?

18         THE DEFENDANT:  Yeah, I understand.

19         THE COURT:  All right.  Are there any open counts,

20    underlying instruments here?

21         MS. ESPINOSA:  Yes, your Honor.  The government moves

22    to dismiss open counts against this defendant.

23         THE COURT:  All right.  I grant that motion.

24         Mr. Pabon, I don't know really what to tell you.  The

25    evidence against you was very strong.  I remember those videos.

MB9HPab2

1    I've read all of this information.  I remember the videos with

2    you.  I remember your nickname, "Banga."  I remember the

3    evidence that you were bragging about the shooting.  I see the

4    issues you've had while incarcerated.  You've got to put all

5    that behind you.  You've got to accommodate yourself to the

6    fact that you're going to be incarcerated now for a substantial

7    period of time.  If you keep fighting the restrictions upon

8    you, it's not going to make sense.  You're going to spend --

9    the Bureau of Prisons people are going to put you in segregated

10   housing, solitary housing.  It just doesn't make sense.

11            I really urge you to use the time in prison, at this

12   point it's the rest of your life, as effectively as you can.

13   Stay in touch with your family.  You've got a GED?

14            THE DEFENDANT:  High school diploma.

15            THE COURT:  Just get additional education.  Go and do

16   it.  Make your life better.  Assist other people there.  Occupy

17   your time with reading, with exercise, with educational

18   courses, with vocational courses.  It doesn't have to be you

19   just sitting around wasting decades.  I urge you not to do

20   that.  Just use your time as effectively as you can, sir.

21            All right.  Thank you all.

22            MR. SCHNEIDER:  Your Honor, I'm sorry.  There's one

23   final thing, if I may.

24            THE COURT:  Yes.

25            MR. SCHNEIDER:  Yes, while Ms. Macedonia and I will

MB9HPab2

1      certainly make sure that Mr. Pabon's appellate rights -- we'll

2      file a notice of appeal.  We ask that we would be relieved.  We

3      spoke to Mr. Pabon before, and I guess there were kind of two

4      issues here.  One is that there are things that Mr. Pabon

5      thinks that we may have either done or didn't do that may raise

6      effective issues or ineffective issues.  And the second thing,

7      just generally speaking, I think when someone's been convicted

8      at a trial and gets a life sentence, it makes sense to have

9      fresh eyes on the transcript to make sure that --

10             THE COURT:  I don't disagree with that, sir, but I

11     don't want to leave him unrepresented for a moment.

12             MR. SCHNEIDER:  No.

13             THE COURT:  Isn't that an appointment made by the

14     circuit court?

15             MR. SCHNEIDER:  Yes, but I want to be clear that your

16     Honor doesn't oppose that.  In other words, we're saying that

17     we will file the notice of appeal, and at some point when we

18     are notified, either Ms. Macedonia or I will then make that

19     motion.  But I just wanted to alert the Court so there's no

20     issue down the road that your Honor specifically said that we

21     can't make that application.  That's all I'm saying.

22             THE COURT:  You can make the application, but my

23     concern is to make sure he's always represented by competent

24     counsel, and you certainly are competent counsel.

25             MR. SCHNEIDER:  I agree a thousand percent, yes.  We

MB9HPab2

1    will make sure he's always represented by counsel at every

2    moment, yes.

3              THE COURT:  OK.  Thank you all.

4              MR. SCHNEIDER:  Thank you.

5              (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25